UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| In re: }<br>JAMES BARTEL, }<br>}<br>Debtor. } | Case No. 09-40154-JJR-7 |
| JAMES BARTEL, }<br>}<br>Plaintiff, }<br>v. }<br>}<br>JACKSONVILLE STATE UNIVERSITY, }<br>}<br>Defendant. } | Adv. P. No. 09-40071-JJR |

## OPINION AND ORDER

This matter came before the Court for trial on the Complaint filed by the Plaintiff ("Bartel"), in which he requested that the Court find and declare that the student loans he obtained from the Defendant ("JSU") should be discharged in his chapter 7 bankruptcy case because excepting such loans from discharge would impose an undue hardship on the debtor. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order. In compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure, the following shall constitute the Court's findings of facts and conclusions of law.[1]

FINDINGS OF FACTS:

Immediately before trial, the parties furnished the Court with their handwritten Stipulations

---

[1]All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

of material facts. Bartel's testimony as well as his Schedules and Statement of Financial Affairs filed in his bankruptcy case provided the Court with additional facts upon which to base this Opinion and Order.[2]

According to the Stipulations, Bartel received from JSU a $500 loan for the 2005 fall semester and another $500 loan for the 2006 spring semester (together, the "Loans"). The proceeds from the Loans were used to pay tuition to JSU and purchase text books. Payments on the Loans began on February 18, 2008, and the last payment before Bartel filed bankruptcy was made on January 23, 2009. He has repaid a total of $185 on the Loans, and the outstanding principal balance is $847.46. Monthly payments are $15 which includes principal plus interest at 2%.

The Stipulations listed some of Bartel's monthly expenses, and like his Schedule I, reflected that he receives monthly disability benefits of $770. He started receiving these benefits in 1992. Unlike his Schedule I, the Stipulations disclosed he receives $111 in food stamp benefits. Bartel testified that his total monthly expenditures, including rent, transportation, utilities (including $14.96 for Internet) and miscellaneous household and personal expenses were $1,000; however, his Schedule J disclosed monthly expenses of only $772.50.

Bartel testified that he was injured in a helicopter crash in 1968 while serving in Vietnam but he was able to return to active duty albeit at a desk job. He has had surgery on his neck, knee, and back, and for the repair of a hernia. The neck surgery was apparently attributed to his military injury. He also testified that he was involved in an automobile accident in which he suffered a head injury and broken ribs.

In spite of all his health problems and disabilities, Bartel received a degree in criminal justice

---

[2]The Stipulation was treated by the Court as a joint exhibit.

from JSU in 2008. He testified that he was unable to obtain employment in the criminal justice field because of his poor health and disabilities. He last worked selling cars, and before that drove a truck. He has not worked for the last 6 years.

CONCLUSIONS OF LAW:

Section 523(a)(8) of the Bankruptcy Code[3] provides that a discharge under Section 727 does not discharge an individual debtor from any debt incurred for an education or student loan "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents . . . ." Bartel has no dependents, so the issue is whether excepting the Loans from discharge will impose an undue hardship on him.

The seminal decision construing Section 523(a)(8) and discharge of student loans is *Brunner v. New York Higher Education Services Corp.,* 831 F. 2d 395 (2d Cir. 1987). In *Brunner,* the circuit court adopted the standard applied by the district court in its reversal of the bankruptcy court's discharge of a debtor's student loans based on a finding of "undue hardship." According to *Brunner* the standard for receiving a discharge based on undue hardship under Section 523(a)(8) involves a three-part test, which requires that the debtor prove:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for her and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

831 F.2d at 396.

The *Brunner* three-part test for determining "undue hardship" in the context of Section

---

[3] 11 U.S.C. § 101 *et seq*, and herein the "Bankruptcy Code" or "Code." Unless the context indicates otherwise, all "Section" references are to a section, subsection or other subdivision of the Code.

3

523(a)(8) was adopted by the Eleventh Circuit in *Hemar Insurance Corp. of America v. Cox,* 338 F.3d 1238 (11th Cir. 2003).[4] The Eleventh Circuit noted that "[c]onsidering the evolution of § 523(a)((8), it is clear that Congress intended to make it difficult for debtors to obtain a discharge of their student loan indebtedness." *Id.* at 1243. In this context, does Bartel pass the *Brunner* test?

There were material differences in Bartel's testimony and the disclosures in his Schedules I and J. He testified his monthly income and expenses were $881 (including food stamps) and $1,000, respectively. The Schedules disclosed monthly income of $770 and expenses of $772.50, and made no mention of food stamps. In the Statistical Summary of Certain Liabilities and Related Data (28 U.S.C. § 159) he listed no "Student Loan Obligations (from Schedule F)". It appears the Schedules were prepared before any consideration was given to the possibility that the Loans might not be discharged in the chapter 7 case. Thus the Court finds the Schedules more credible.

There is no question that Bartel is in poor health, suffers from numerous ailments, and that his condition is unlikely to improve at anytime in the future. However, even though Bartel's physical condition is not likely to improve, the Court concludes that under the first part of the *Brunner* test, he did not prove that he could not maintain a *minimal* standard of living if required to repay the Loans. The monthly payments are $15, a few cents more than Bartel is paying for monthly Internet service. While the Internet might be entertaining, educational, informative and useful for communicating through email, it is not a necessity for maintaining a minimal standard of living.

Bartel also does not pass the third part of the test. He began receiving disability payments in 1992, and his disability income remained constant except for cost-of-living increases. Nonetheless, even though Bartel knew that neither his physical nor financial condition was likely

---

[4] Other circuits have adopted the *Brunner* standard. *Cox,* 338 F.3d at 1241.

Case 09-40071-JJR   Doc 13   Filed 03/10/10   Entered 03/10/10 15:02:35   Desc Main
Document      Page 4 of 5

to improve, without evidence to the contrary, the Court will assume when he borrowed the Loans in 2005-06 he believed he had the wherewithal to repay them. In fact, Bartel paid on the Loans up to the time he filed for bankruptcy. And most significantly, in July 2008, after taking out the Loans, he borrowed at least $18,000 to purchase a 2008 Suzuki automobile. Taking out a loan to buy a new car under these circumstances dissuades the Court from finding that Bartel was making a good faith effort to pay the Loans.

The *Brunner* test is not an easy one to pass. Failure to satisfy any of its three parts results in a failure to prove undue hardship under Section 523(a)(8). As other courts have pointed out, Congress did not intend for debtors with student loans to easily pass along their debt-burdens to taxpayers (i.e. government guaranteed loans) and educational institutions by discharging such loans in bankruptcy under the same standards applicable to other debts. While repaying the Loans will likely be difficult for Bartel, he did not prove their payment will result in an undue hardship under Section 523(a)(8), at least not according to the test adopted by the Eleventh Circuit which this Court is obliged to follow.

ORDER:

THEREFORE IT IS ORDERED, ADJUDGED and DECREED that pursuant to Section 523(a)(8), the Loans owing by Bartel to JSU are not discharged under Section 727 in Bartel's chapter 7 case. This Order shall constitute a judgment entered pursuant to Rule 9021. The Clerk is directed to close this adversary proceeding at the expiration of the appeal time and no appeal having been taken.

Dated: March 10, 2010

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

5